## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

WILLIAM CLAUDE MEAD,

        **Petitioner,**

v.                                                    **Case No. 19-CV-426-JFH-DES**

RANDY HARDING,[1]

        **Respondent.**

## OPINION AND ORDER

Petitioner William C. Mead ("Mead"), a state prisoner appearing *pro se*,[2] brings this action pursuant to 28 U.S.C. § 2254, seeking federal habeas relief from the judgment entered against him in the District Court of Atoka County, Case No. CF-2015-289.  Dkt. No. 1.  Respondent Randy Harding ("Respondent") filed a response [Dkt. No. 13] in opposition to the petition, as well as the state-court record [Dkt. No. 14], and Mead has submitted a reply [Dkt. No. 15].  Having considered the parties' arguments and the relevant record, the Court denies the petition.

### I.    BACKGROUND

Mead was convicted in a non-jury trial in 2017 of one count of lewd molestation, in violation of Okla. Stat. tit. 21, § 1123(A)(2) (Count 1), and two counts of sodomy where the victim was under sixteen years of age, in violation of Okla. Stat. tit. 21, § 888(B)(1) (Counts 3 and 4).

---

[1]  Mead presently is incarcerated at the Dick Conner Correctional Center, in Hominy, Oklahoma. The Court therefore substitutes Dick Conner Correctional Center's current warden, Randy Harding, in the place of David Louthan, as party respondent.  *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.

[2]  Because Mead appears without counsel, the Court must liberally construe his pleadings.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the rule of liberal construction neither requires nor permits the Court to act as an advocate on his behalf by crafting legal arguments or scouring the record for facts to support his claims.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Dkt. No. 14-4 at 112.[3]  The trial court sentenced Mead to twenty years of imprisonment on each count, with all terms to be served concurrently.  *Id.* at 79.

Mead directly appealed the judgment and sentence to the Oklahoma Court of Criminal Appeals (OCCA), arguing that the State presented insufficient evidence to support his convictions and that he received ineffective assistance of trial counsel.  Dkt. No. 1-1 at 8-17.  The OCCA affirmed the judgment and sentence in *Mead v. State*, No. F-2017-209 (Okla. Crim. App. Feb. 15, 2018).  *Id.* at 18-23.  On April 10, 2019, Mead filed an application for post-conviction relief, claiming that he received ineffective assistance of appellate counsel due to counsel's failure to raise purportedly meritorious arguments on direct appeal.  Dkt. No. 1-2 at 1-21.  The state district court denied Mead's application on July 23, 2019.  *Id.* at 22-27.  Mead appealed the decision to the OCCA, which affirmed the district court's denial of relief.  Dkt. No. 1-3 at 1-21, 22-27.  Mead initiated this federal habeas action on December 17, 2019, raising claims of insufficient evidence, ineffective assistance of counsel, and prosecutorial misconduct.  Dkt. No. 1 at 7-28

## II.     LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).  When a claim has been "adjudicated on the merits in State court proceedings," federal habeas relief may be granted under the AEDPA only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable

---

[3]  The Court's citations refer to the CM/ECF header pagination.

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alteration and internal quotation marks omitted).  A state-court decision is "contrary to" clearly established federal law if the conclusion is "opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts."  *Id.* (alterations and internal quotation marks omitted).  A state-court decision is an "unreasonable application" of clearly established federal law if the "state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* (alteration and internal quotation marks omitted).  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Renico*, 559 U.S. at 773 (citations and internal quotation marks omitted) (emphasis in original).  Further, a state-court's "determination of a factual issue . . . shall be presumed to be correct," unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## III.   DISCUSSION

### A.  Ground 1: Sufficiency of the Evidence

Mead contends in Ground 1, as he did on direct appeal, that the State presented insufficient evidence to support his convictions of lewd molestation and forcible sodomy.  Dkt. No. 1 at 7-9;

*see* Dkt. No. 1-1 at 8-13.  Mead specifically contends that the victim's (D.L.) testimony regarding the date of the offense was inconsistent and not credible.  Dkt. No. 1 at 7-9.  When reviewing the sufficiency of the evidence supporting a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The Court "consider[s] all of the evidence, direct and circumstantial, along with reasonable inferences," but does not "weigh the evidence or consider the relative credibility of witnesses."  *United States v. Griffith*, 928 F.3d 855, 868-69 (10th Cir. 2019) (internal quotation marks omitted).

The OCCA reviewed and rejected Mead's claim under the *Jackson* standard on direct appeal:

> Mead argues the evidence was insufficient to prove his guilt beyond a reasonable doubt for the charged crimes because the victim's testimony was inconsistent.  This claim is without merit.
>
> Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, any rational trier of fact could find the defendant guilty beyond a reasonable doubt.  *Coddington v. State*, 2006 OK CR 34, ¶ 70, 142 P.3d 437, 456; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04.  This Court does not reweigh conflicting evidence or second-guess the fact-finding decisions of the finder of fact; we accept all reasonable inferences and credibility choices that tend to support the verdict.  *See Day v. State*, 2013 OK CR 8, ¶ 12, 303 P.3d 291, 298; *Coddington*, 2006 OK CR 34, ¶ 70, 142 P.3d at 456.  A conviction for sexual assault crimes may be sustained upon the uncorroborated testimony of the prosecuting witness, unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief.  *See Ray v. State*, 1988 OK CR 199, ¶ 8, 762 P.2d 274, 277.  If the record reveals the testimony of the prosecuting witness is clear and believable and is not inconsistent, incredible or contradictory, we will not interfere with the fact finder's verdict.  *Id.*
>
> The record in this case shows that the victim's testimony was not so incredible or so unsubstantial as to make it unworthy of belief.  *See Gilmore v. State*, 1993 OK CR 27, ¶ 12, 855 P.2d 143, 145; *Ray*, 1988 OK CR 199, ¶ 8, 762 P.2d at 277.  His testimony was lucid, clear and any minor inconsistencies were explored.  His

memory and veracity were thoroughly tested on cross-examination. According to the forensic interviewer, the victim's demeanor and body posturing during the forensic interview were very open and he had good eye contact. He provided accurate sensory detail both during his forensic interview and at trial, lending credibility to his account. Based on the evidence, the district court rationally concluded that the victim's claims of molestation were credible. Viewing the trial evidence in the light most favorable to the State, we find the victim's testimony provided sufficient evidence to support Mead's convictions.

Dkt. No. 1-1 at 19-20.

Mead has not shown that the OCCA's rejection of his challenge to the sufficiency of the evidence was "contrary to" or "an unreasonable application of" clearly established federal law, or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The date of the offense is not an "essential element" of either crime.[4] *Jackson*, 443 U.S. at 319. Any inconsistencies in D.L.'s attempts to recollect the exact date of the crimes speak solely to witness credibility, which the Court may not consider when conducting its review. *See Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) ("The Court may not weigh conflicting evidence nor consider the credibility of witnesses," but "must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993))); *Jackson*, 443 U.S. at 319 (explaining that the *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

---

[4]  Under Oklahoma law, lewd molestation includes the following elements: (1) the defendant knowingly and intentionally; (2) looked upon, touched, mauled, or felt; (3) the body or private parts; (4) of a child under sixteen years of age; (5) in any lewd or lascivious manner; and (5) the defendant was at least three years older than the child or used force or fear. *See* Okla. Unif. Jury Instr. CR 4-129; Okla. Stat. tit. 21, § 1123(A)(2). Sodomy of a victim under the age of sixteen includes the following elements: (1) penetration; (2) of the mouth/vagina of the victim/defendant; (3) by the mouth/penis of the defendant/victim; (4) by a person over the age of eighteen on a child under the age of sixteen. *See* Okla. Unif. Jury Instr. CR 4-128; Okla. Stat. tit. 21, § 888(B)(1).

facts to ultimate facts").

As noted by the OCCA, the trial court was presented with evidence supporting D.L.'s credibility. Any minor inconsistencies in D.L.'s recollection of the precise date do not render the trial court's resolution of the evidence outside "the bounds of reason." *Messer*, 74 F.3d at 1013 (internal quotation marks omitted). Accordingly, relief is not warranted on this claim.

### B. Grounds 2 through 8: Ineffective Assistance of Counsel

In Grounds 2 through 8, Mead appears to raise claims of ineffective assistance of trial counsel. Dkt. No. 1 at 9-25. Respondent states that the claims of ineffective assistance of trial counsel have never been presented to the OCCA and are therefore unexhausted. Dkt. No. 13 at 24 n.16, 46 n.29, 54 n.33, 59 n.34, 65 n.35, 72 n.36, 79 n.43. While Mead raised the arguments in his application for postconviction relief, he did so in the context of claims of ineffective assistance of appellate counsel, arguing that appellate counsel was ineffective for failing to raise the claims of ineffective assistance of trial counsel on direct appeal. *See* Dkt. No. 1-2 at 4-7, 9-18. Respondent notes that there is some ambiguity regarding whether Mead intended to raise claims against trial counsel in Grounds 2 through 8 of his habeas petition or whether Mead intended to raise the claims of ineffective assistance of appellate counsel he exhausted on postconviction. Respondent concludes that, "because the petition is entitled to a liberal construction," Respondent would treat the claims as "attack[s] on appellate counsel's effectiveness for failing to . . . challenge trial counsel's performance on [these] bas[e]s on direct appeal." Dkt. No. 13 at 24 n.16, 46 n.29, 54 n.33, 59 n.34, 65 n.35, 72 n.36, 79 n.43. Because Mead's intentions on this point are unclear, the Court considers the claims under both constructions.

First, if the Court construes Grounds 2 through 8 as claims of ineffective assistance of trial counsel, the claims are subject to an anticipatory procedural bar precluding this Court's review.

Mead failed to raise his claims of ineffective assistance of trial counsel (distinct from his clams of ineffective assistance of appellate counsel) in state court, and Oklahoma's waiver rule would preclude Mead from now raising the claims if he returned to state court for that purpose.[5]  *See Fontenot v. Crow*, 4 F.4th 982, 1023 (10th Cir. 2021) ("The OCCA has 'repeatedly stated that Oklahoma's Post-Conviction Procedure Act is not an opportunity to . . . assert claims that could have been raised on direct appeal.'" (quoting *Rojem v. State*, 925 P.2d 70, 72-73 (Okla. Crim App. 1996))).  Mead may overcome this bar by demonstrating either "cause for the default and actual prejudice," or "a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Mead argues in a separate claim for relief that his appellate counsel was ineffective for omitting the trial-counsel claims on direct appeal.  Dkt. No. 1 at 27-28.  While "[a]ttorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default," the Court concludes, for the reasons discussed below, that appellate counsel's omission of the claims did not constitute an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  *Hickman v. Spears*, 160 F.3d 1269, 1272 (10th Cir. 1998); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Accordingly, Mead has not shown cause for his procedural default in state court.  *See Hickman*, 160 F.3d at 1273 ("Because the same legal standards govern petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, we must determine whether petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim.").  Nor does Mead demonstrate a fundamental miscarriage of justice

---

[5]  Mead did raise a claim of ineffective assistance of trial counsel on direct appeal, but the argument underlying the claim is distinct from the arguments Mead now presents in his habeas petition.  *See* Dkt. No. 1-1 at 14-16.

necessitating the Court's review, as he does not make a colorable showing of factual innocence. *See Hickman*, 160 F.3d at 1275.

Alternatively, if the Court construes Grounds 2 through 8 as claims of ineffective assistance of appellate counsel, the Court's review is subject to AEDPA deference insofar as the OCCA adjudicated the claims on the merits.  Claims of ineffective assistance of counsel are analyzed under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  The petitioner must first demonstrate that counsel's performance was deficient, which requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.   The petitioner must then demonstrate that "the deficient performance prejudiced the defense." *Id.* at 687.  To establish prejudice, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  When, however, a petitioner seeks habeas relief on a claim of ineffective assistance of counsel under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (citations omitted).   "When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, [courts] must look to the merits of the omitted issue." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).  "If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." *Id.*

Mead first raised his claims of ineffective assistance of appellate counsel in his application for postconviction relief.  The OCCA found certain claims were barred under the doctrine of *res judicata* and rejected the remaining claims under the *Strickland* standard:

> On April 10, 2019, Petitioner filed an application for post-conviction relief in the district court.  The application asserted direct appeal counsel was ineffective for omitting challenges to trial counsel's representation for failing to do the following: attack the credibility of the victim (Claims 1 & 5); interview witnesses and investigate (Claims 2 & 10); attack the jurisdiction of the trial court (Claim 3); assert procedural irregularities occurring at arraignment (Claim 4); communicate with Petitioner prior to trial (Claim 6); hire an expert witness (Claim 7); suppress statements made by [B.A.] to an investigator (Claim 8); object to the testimony of a forensic interviewer (Claim 9); and, present a prosecutorial misconduct claim (Claim 11).  The application also contended Petitioner was entitled to relief based on cumulative error (Claim 12).  The application was denied in a thorough and well-reasoned decision issued July 23, 2019.

> Before us, as before the district court, Petitioner challenges the effectiveness of appellate counsel for failure to raise sundry omissions of trial counsel.  Our obligation is to review the district court's denial of post-conviction relief for an abuse of discretion.  *State ex rel. Smith v. Neuwirth*, 2014 OK CR 16, ¶ 12, 337 P.3d 763, 766.  An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue or a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented.  *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.  We find no abuse of discretion.

> As noted by the district court, in several instances the essence of claims presented in the application were previously raised on direct appeal.  Such claims are not cognizable on post-conviction.  *See Stevens v. State*, 2018 OK CR 11, ¶ 14, 422 P.3d 745-46 (issues previously raised are barred by the doctrine of *res judicata*).  For this reason, it was not an abuse of discretion for the district court to deny relief on Claims 1, 2, 5, 6, and 9.

> In the remaining instances, the district court denied relief because it found the underlying claim lacked merit.  Upon review, we agree that Petitioner has failed to demonstrate appellate counsel's ineffectiveness.  As set forth in *Logan v. State*, 2013 OK CR 2, ¶ 5, 293 P.3d 969, 973, post-conviction claims of ineffective assistance of appellate counsel are appropriate and are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> Under *Strickland*, a petitioner must show both: (1) deficient performance, by demonstrating that counsel's conduct was objectively unreasonable; and (2)

9

resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89, 104 S.Ct. at 2064-66. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). Petitioner has failed to rebut this presumption. *See Russell v. Cherokee County District Court*, 1968 OK CR 45, ¶ 5, 438 P.2d 293, 294 ("the burden is upon the petitioner to sustain the allegations of his petition"). Accordingly, the district court did not abuse its discretion when it denied relief on Claims 3, 4, 7, 8, 10, 11, and 12.

Dkt. No. 1-3 at 23-25.

### 1.   *Claims Barred on Postconviction under Doctrine of* Res Judicata

The OCCA determined that the issues raised in the "omitted claims" 1, 2, 5, 6, and 9 had been raised on direct appeal and therefore were barred under the doctrine of *res judicata*. *Id.* at 24. This determination affirmed the state trial court's holding that these omitted claims "address[ed] issues of impeachment of the victim's testimony concerning what date, if any, the crimes were committed, whether B.A. and the victim ever spent the night with the Petitioner[,] and the victim's forensic interview," and that "[t]hese same inconsistencies were addressed in the direct appeal wherein the appellate court affirmed the judgment of the trial court." Dkt. No. 1-2 at 25. Generally, "the OCCA's refusal to consider [a] claim in the post-conviction context based on *res judicata* create[s] no bar to habeas review of the claim in the federal courts." *Grant v. Royal*, 886 F.3d 874, 929 (10th Cir. 2018). The Court simply reviews the OCCA's resolution of the claim on direct appeal under the AEDPA's deferential standard. *Id.* If, however, the OCCA was "mistaken in concluding that it had previously considered the claim," the Court considers the claim de novo. *Id.*; *see Cone v. Bell*, 556 U.S. 449, 466-67, 472 (2009).

Because "omitted claim" 6 does not appear in Mead's habeas petition, the Court confines its analysis to "omitted claims" 1, 2, 5, and 9, which correlate to Grounds 2, 3, and 8 of Mead's

habeas petition.[6]  Having reviewed Mead's direct appeal brief and the OCCA's denial of relief on direct appeal, the Court cannot conclude that the issues raised in "omitted claims" 2, 5, and 9 on postconviction were previously raised.  Mead claimed on direct appeal that insufficient evidence supported his conviction due to inconsistencies between D.L.'s forensic interview statements, preliminary hearing testimony, and trial testimony.  Dkt. No. 1-1 at 8-13.  The OCCA's determination that D.L.'s "testimony provided sufficient evidence to support Mead's convictions," despite the minor inconsistencies, does not appear to encompass Mead's arguments in "omitted claims" 2, 5, and 9, that trial counsel "failed to interview or subpoena crucial witnesses" ("omitted claim" 2), "failed to cross-examine D.L. with his school records, prior statements[,] sworn testimony and Petitioner's . . . probable cause affidavit" ("omitted claim" 5), and "failed to object to the testimony of [the] forensic interviewer" ("omitted claim" 9).  Whether "omitted claim" 1 was properly rejected under the doctrine of *res judicata* presents a closer question.  Mead alleged in "omitted claim" 1 that appellate counsel was deficient for "omitt[ing] a claim that the record establishes that D.L.'s own testimony proves that he was not at Petitioner's house" on the dates alleged. Dkt. No. 1-2 at 3-4.  Mead did address on direct appeal inconsistencies in D.L.'s testimony regarding the dates of the crimes.  Dkt. No. 1-1 at 8-9.  The Court need not determine whether *res judicata* was properly applied to this argument on postconviction, however, as the argument fails even under de novo review.  For these reasons, the Court reviews Grounds 2, 3, and 8 of Mead's petition de novo.

In Ground 2, Mead argues that trial counsel was ineffective for failing to:  (1) interview the father of D.L.'s friend, B.A.; (2) interview D.L.'s parents; and (3) cross-examine D.L. with his

---

[6]  Ground 2 of Mead's petition appears to incorporate both "omitted claims" 1 and 2.

school records.  Dkt. No. 1 at 9-17.  Mead contends that the school records and the testimony of B.A.'s father and D.L.'s parents could have impeached D.L.'s testimony regarding the date of the offenses, showing that D.L. and B.A. did not spend the night at Mead's home on November 11, 2015, as alleged, and that D.L. was not out of school the following day due to a federal holiday, as alleged.  Mead notes that Veterans Day fell on November 11, 2015, rather than November 12, 2015.  Dkt. No. 1, at 10.

The confusion, however, appears to have been the product of the prosecutor's statement to D.L. at the preliminary hearing that Veteran's Day fell on November 12.  Dkt. No. 14-1 at 36 (prosecutor stating, "I notice by my calendar . . . that November 11th is on a Wednesday," and "I also believe that the next day is Veteran's Day").  Though D.L. at times expressed certainty regarding the dates, D.L. initially testified on direct examination at trial that he did not recall the exact date of the sexual abuse and later testified on cross-examination that he did not recall whether he went to school on November 12, 2015.  Dkt. No. 14-3 at 18, 45-46.  Trial counsel was not unreasonable for failing to call rebuttal witnesses when D.L. acknowledged his uncertainty.  *See Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.").  Further, trial counsel thoroughly cross-examined D.L. as to inconsistencies in his recollection of the date and his school attendance.  *Id.* at 45-46 (trial counsel asking D.L. if he would dispute his school attendance records if they showed that D.L. was in attendance on November 12, 2015, and directing trial court to the attendance records).  Accordingly, Mead has not shown that trial counsel's performance was deficient or that testimony from the proposed witnesses would have resulted in a different outcome.

Mead argues in Ground 3 that D.L. made false statements to his forensic interviewer, which were then used to obtain his arrest warrant.  Dkt. No. 1 at 17-18.  He contends that trial counsel

was ineffective for failing to cross-examine D.L. with the affidavit to "undermine his credibility." *Id.* at 18. Even if trial counsel did not reference the affidavit when cross-examining D.L. at trial, Mead has not shown that trial counsel failed to address the issues on cross-examination that Mead contends were false in the affidavit (namely, D.L.'s assertions regarding the date of the offenses and whether D.L. consumed alcohol and marijuana on that date). *Id.* at 17; *see* Dkt. No. 14-3 at 42-54; Dkt. No. 14-4 at 8. Mead also suggests in Ground 3 that the trial court lacked jurisdiction because the probable cause affidavit supporting Mead's arrest warrant contained false statements.[7] *Id.* at 23. He claims trial counsel should have cross-examined D.L. with the affidavit to demonstrate this purported jurisdictional defect. *Id.* Generally, however, jurisdiction in an Oklahoma criminal case lies in the county where the alleged crime was committed. *See* Okla. Const. art. II, § 20. None of the alleged false statements supporting Mead's arrest warrant implicate the location of the crime, and Mead provides no argument implicating subject matter jurisdiction. Dkt. No. 1-2 at 7-8. The Court therefore concludes that Mead has shown neither deficient performance nor resulting prejudice in Ground 3.

In Ground 8, Mead argues that trial counsel was ineffective for failing to object to the testimony of D.L.'s forensic examiner. Dkt. No. 1 at 24-25. Mead contends that D.L.'s testimony at trial demonstrated that he lied during his forensic interview. He contends that the forensic examiner's testimony that "she did not see any indicators that D.L. had lied in his forensic interview" was therefore "unnecessary, not relevant, and misleading." *Id.* at 25. Trial counsel, however, did object to the forensic interviewer's testimony on the basis that it was not relevant and that it "invade[d] the purview of the trier of fact on the ultimate issue." Dkt. No. 14-3 at 124-

---

[7] The state trial court and OCCA considered and rejected this portion of Mead's argument on the merits, and the Court therefore considers the state courts' adjudication of the argument under AEDPA's deferential standard. Dkt. No. 1-2 at 7-8, 26.

25. The trial court overruled the objection in part, allowing the forensic interviewer to speak on whether she had observed indicators of deception, but sustained the objection in part, precluding testimony on "the ultimate opinion as to whether there was truthfulness or not." *Id.* Given trial counsel's objection and the court's response, Mead cannot show that trial counsel acted deficiently or that the defense was prejudiced on the bases alleged in Ground 8.

### 2. Claims Considered on Their Merits on Postconviction

As to the remaining trial-counsel claims Mead faults his appellate counsel for omitting on direct appeal, the OCCA considered and rejected the claims on the merits, and the OCCA's determination is entitled to the deference afforded under the AEDPA. Having reviewed the claims, which Mead presents in Grounds 4 through 7 of his petition, the Court agrees with the OCCA that Mead's arguments lack merit and cannot support a finding of deficient performance or prejudice under *Strickland*.

In Ground 4, Mead argues that trial counsel was ineffective for failing to review Mead's arraignment proceedings. Dkt. No. 1 at 18-19. The proceedings were flawed, Mead claims, in that Mead was arraigned without an arrest warrant or supporting affidavit and without the representation of counsel. *Id.*; *see* Dkt. No. 1-2 at 9-11. The record reflects, however, that a verified probable cause affidavit was attached to the Information filed in Court on December 11, 2015, and that Mead's initial appearance occurred on that same date. Dkt. No. 14-4, at 5-10. The trial court provided Mead a copy of the Information at the initial appearance. *Id.* at 10. Regarding representation of counsel, the trial court advised Mead at his initial appearance of his right to court-appointed counsel if indigent. *Id.* Mead stated to the trial court that he would hire an attorney. *Id.* Further, Mead has not shown that the absence of counsel at his arraignment constituted a violation of his constitutional rights. The Sixth Amendment right to counsel generally attaches "at or after

the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (internal quotation marks omitted). "Once attachment occurs, the accused . . . is entitled to the presence of appointed counsel during any 'critical stage' of the *postattachment* proceedings." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 (2008) (emphasis added) (holding that "counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself").

Mead contends in Ground 5 that trial counsel was ineffective for failing to hire an expert witness to opine on D.L.'s mental health. Dkt. No. 1, at 20; *see* Dkt. No. 1-2, at 14. Mead states that "trial counsel was provided a DHS Report showing that D.L.'s family had a history of mental illness, his father was in a me[n]tal institution because of schizophrenia, and D.L. had mental health issues, is currently taking medicine for schizophrenia, had previously accused others of sexual abuse, and had attempted suicide on at least one other occasion." Dkt. No. 1 at 20. "[T]he decision of which witnesses to call," however, "is quintessentially a matter of strategy for the trial attorney." *Boyle*, 544 F.3d at 1139; *see United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981) ("Whether to call a particular witness is a tactical decision and, thus, a 'matter of discretion' for trial counsel."). "While it is error not to call a witness when that witness would present the only defense available," other defense strategies were available to Mead and were reasonably pursued by Mead's trial counsel. *Miller*, 643 F.2d at 714 (internal quotation marks omitted).

Counsel called three witnesses on Mead's behalf, eliciting testimony that challenged aspects of the State's case. Dkt. No. 14-3 at 3, 132-180. Counsel also thoroughly cross-examined D.L. at trial and questioned D.L. as to the medication he was taking at the time of D.L.'s forensic interview, which included medication for ADHD and mood swings. *Id.* at 41-66, 91-99. Even

assuming D.L. was also diagnosed with schizophrenia at the time, there is no indication that D.L.'s recollection of events or truthfulness regarding those events was impacted. The individual who performed D.L.'s forensic interview testified on behalf of the State that she saw no indicators of deception from the victim. Dkt. No. 14-3, at 126. She testified that the victim maintained good eye contact and provided "very good sensory detail[s]" about the sexual offenses. *Id.* at 126-27. For these reasons, Mead has not shown that counsel was deficient in failing to retain a medical expert or that a medical expert would have changed the outcome of the trial.

Ground 6 regards the testimony of investigator John Hoffpauir regarding Hoffpauir's 2013 and 2015 interviews with D.L's friend B.A and the admission of text messages sent between Mead and B.A. when B.A. was twelve years old. Dkt. No. 1 at 21-22; *see* Dkt. No. 1-2 at 15-16. Mead claims that trial counsel was ineffective for failing to file a motion to suppress this evidence on the basis that it lacked relevance. Dkt. No. 1 at 21-22. The evidence, however, was offered to attack B.A.'s credibility, as the text messages rebutted B.A.'s testimony that he had never spent the night with Mead. *See* Dkt. No. 14-3 at 172-75, 188; *see id.* at 174-75 (prosecution stating that the text messages were being offered to address B.A's credibility and trial court responding that it "understands that the testimony can only be used for the purpose of impeachment or credibility issues"). Mead has not shown that the evidence lacked relevance or was otherwise improperly admitted. Accordingly, trial counsel did not act deficiently in failing to seek its suppression. Nor has Mead demonstrated prejudice on this point.

Mead argues in Ground 7 that his trial counsel was deficient for failing to conduct an adequate pretrial investigation. Dkt. No. 1, at 22-24; *see* Dkt. No. 1-2 at 17-18. Mead first avers that counsel should have retrieved school records and interviewed witnesses who would have shown that D.L.'s testimony regarding the date of the offense was not credible. Dkt. No. 1 at 22.

16

Defense counsel, however, explored the discrepancies in D.L.'s testimony at trial regarding the date of the offense, and there is no indication that additional evidence on this point would have altered the outcome of the case.  Mead also argues that his counsel's failure to investigate resulted in the omissions discussed in Grounds 3, 4, 5, and 6 of his petition.  *Id.*  The Court, however, has found these grounds to be without merit.  In sum, Mead has not shown that trial counsel failed to perform an adequate pretrial investigation or that further investigation would have altered the outcome of the trial.

For these reasons, the Court determines that the arguments of ineffective assistance of trial counsel that Mead faults his appellate attorney for omitting on direct appeal lack merit.  Appellate counsel's failure to raise them on direct appeal therefore was not prejudicial, and Mead cannot show ineffective assistance under *Strickland*.  *See Orange*, 447 F.3d at 797.  Consequently, Mead has not demonstrated that the OCCA's adjudication of his ineffective assistance of appellate counsel claims, as addressed in Grounds 4 through 7, "resulted in a decision that was contrary to, or involved an unreasonable application of," *Strickland*.  28 U.S.C. § 2254(d)(1).

### C.  Ground 9: Prosecutorial Misconduct

Mead next argues that prosecutorial misconduct deprived him of his due process right to a fair trial.  Dkt. No. 1 at 25-27.  Respondent correctly notes that a prosecutorial misconduct claim has never been presented to the OCCA and is therefore unexhausted.  Dkt. No. 13 at 83 n.44. Rather, in his application for postconviction relief, Petitioner challenged his appellate counsel's failure to raise a prosecutorial misconduct claim on direct appeal.  *Id.*; *see* Dkt. No. 1-2 at 18-19. Similarly to Grounds 2 through 8, Respondent states with regard to Ground 9 that, "because the petition is entitled to liberal construction, Respondent will treat this claim as an attack on appellate counsel's effectiveness for failing to raise a claim alleging prosecutorial misconduct as raised by

Petitioner in his post-conviction proceedings." Dkt. No. 13 at 83 n.44.

As with Grounds 2 through 8, Ground 9 fails under either construction.  If the Court construes Ground 9 as a prosecutorial misconduct claim, the claim is subject to an anticipatory procedural bar.  Mead failed to raise the claim in state court, and he would be procedurally barred from doing so now under Oklahoma's waiver rule, should he return to state court to exhaust it. *See Grant*, 886 F.3d at 901 ("Under Oklahoma's Uniform Post-Conviction Procedure Act, 'only claims which were not and could not have been raised on direct appeal will be considered in post-conviction proceedings.'" (alterations and internal quotation marks omitted)).  Accordingly, the Court is precluded from considering the claim, absent a showing of either "cause for the default and actual prejudice," or a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 750. While Mead has raised a claim of ineffective assistance of appellate counsel based on counsel's omission of a prosecutorial misconduct claim on direct appeal, the claim lacks merit, as discussed below, and therefore cannot support a showing of cause.  *See Hickman*, 160 F.3d at 1272.  Nor has Mead made a colorable showing of actual innocence allowing consideration of the prosecutorial misconduct claim.

Alternatively, if the Court construes the claim, as Respondent proposes, as a claim of ineffective assistance of appellate counsel based on appellate counsel's omission of the claim on direct appeal, the Court finds that habeas relief is unwarranted under § 2254(d).  Because the OCCA adjudicated this claim on the merits, the Court reviews the OCCA's determination under § 2254(d) and asks "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Richter*, 562 U.S. at 105.  The Court concludes that the OCCA's rejection of the claim under *Strickland* was reasonable.

Mead argues that the State improperly introduced Hoffpauir's testimony and the 2013 text messages between Mead and B.A. to "mislead the court" into thinking Mead had an improper relationship with B.A.[8]  Dkt. No. 1 at 25-27.  He also contends that the State improperly called D.L.'s forensic interviewer to testify as to D.L.'s truthfulness during the forensic interview, when the State "knew that D.L.'s sworn testimony established that he was untruthful" during the interview.  *Id.* at 27.  "[D]eliberate deception of a court and jurors by the presentation of known false evidence" may constitute a violation of due process.  *Giglio v. United States*, 405 U.S. 150, 153 (1972).  No deliberate deception, however, is evident in the State's presentation of the testimony, and Mead claims only that the evidence was misleading, not that it was false.  The 2013 text messages between Mead and B.A. were offered as rebuttal evidence to impeach B.A.'s testimony, and the Court acknowledged that their use was limited to this purpose.  Dkt. No. 14-3 at 175.  Hoffpauir testified regarding his recollection of his interviews with B.A., and the forensic interviewer testified as to her recollection of her forensic interview with D.L.  In neither instance is there evidence of perjury, let alone the State's knowledge of perjury.

Mead has not shown that the State's introduction of this evidence violated his due process rights to a fair trial.  Thus, the OCCA's determination that appellate counsel did not render ineffective assistance by omitting the prosecutorial misconduct claim on direct appeal was neither

---

[8]  Respondent argues that Mead "expand[ed] his prosecutorial misconduct claim to the 2013 text messages by arguing that defense counsel filed a pre-trial motion for police reports and did not receive any reports regarding Mr. Hoffpauir's interviews with B.A. in 2013 or 2015," and by arguing that "the State improperly relied on the 2013 text message evidence between B.A. and [Mead] as *Burks* evidence."  Dkt. No. 13 at 85.  Respondent contends that these arguments are unexhausted and subject to an anticipatory procedural bar.  *Id.* at 85-86.  The Court finds that, to the extent Mead has expanded his prosecutorial misconduct claim to encompass arguments not fairly presented to the state courts, the Court is procedurally barred from reviewing the new arguments.  *See Grant*, 886 F.3d at 891-92 (holding that a petitioner may not shift the basis of his argument away from what was previously raised in state court).

contrary to, nor an unreasonable application of, *Strickland*.  *See* 28 U.S.C. § 2254(d).

### D.  Ground 10: Ineffective Assistance of Appellate Counsel

Finally, Mead argues in Ground 10 that he received ineffective assistance of appellate counsel due to counsel's omission on direct appeal of the issues he now raises in his habeas petition.  Dkt. No. 1 at 27.  The Court considered and rejected this argument in sections III.B and III.C.  Mead also argues that appellate counsel's omission of the arguments on direct appeal had a cumulative effect of violating his federal constitutional right to a fair trial, even if the arguments individually are harmless.  *Id.* at 28.  "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002) (internal quotation marks omitted).  The cumulative error analysis, however, applies "only upon a showing of at least two actual errors."  *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015).  As Mead has not shown two or more actual errors, his cumulative error argument is without merit.

### IV.   CONCLUSION

Based on the foregoing, the Court denies Mead's petition for a writ of habeas corpus [Dkt. No. 1].  Under Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that the requisite standards have not been met in this case and therefore declines to issue a certificate of appealability.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1.  the Clerk of Court shall note on the record the substitution of Randy Harding in place of David Louthan as party respondent;

2.  the petition for writ of habeas corpus [Dkt. No. 1] is DENIED; and

3.  a certificate of appealability is DENIED.

Dated this 1st day of April 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

21